

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARRYL TRISKO, )
)
Plaintiff, )
) No. 10-CV-00281
v. ) Magistrate Judge
) Arlander Keys
NITTO KOHKI U.S.A., INC., )
a California corporation )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

After two and a half years of at-will employment, on April 15, 2009, Defendant, Nitto Kohki U.S.A., Inc. ("Nitto"), terminated Plaintiff, Darryl Trisko ("Mr. Trisko"), from his job as a Sales Representative in Nitto's CUPLA Division. Mr. Trisko filed suit alleging three causes of action: national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et. Seq., race discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) et. Seq., and race discrimination, in violation of 42 U.S.C. §1981. Nitto contends that Mr. Trisko's claims are completely barred by the Treaty of Friendship, Commerce and Navigation ("FCN Treaty"), between the United States and Japan. Furthermore, Defendant asserts that, even if the FCN Treaty were to be obviated, Plaintiff has failed

to meet his *prima facie* case and there are no genuine issues of material fact in dispute. The case is currently before the Court on Nitto's Motion for Summary Judgment, which, for the reasons set forth below, is granted.

**BACKGROUND**

Nitto is a California corporation with its principal place of business in Hanover Park, Illinois. Def. Answer ¶2. Nitto is a wholly-owned subsidiary of Nitto Kohki Co., Ltd., located in Japan ("Nitto Japan"). Nitto sells and services machine tools and quick-connecting fluid couplings that are designed and manufactured by Nitto Japan. Nitto is composed of two separate divisions: (1) Tool and (2) CUPLA, which sell and service different product lines and are independently tracked and reported for profit-and-loss purposes. Def. Statement of Facts ¶3.

The CUPLA Division consisted of only three employees: Robert Loveland, Sales Manager (Caucasian-American, 10-years with Nitto), Darryl Trisko, Sales Representative (Caucasian-American, 2 ½-years with Nitto), and Phillip Lee, Customer Service Representative (African-American, not established how long with Nitto). Wakikata Aff. ¶18. From January 1, 2008 through December 31, 2008, Mr. Nobuharu Wakikata ("Mr. Wakikata"), General Sales Manager, served as the supervisor for Mr. Trisko. However, on September 16, 2008,

2

Nitto Japan announced that Mr. Wakikata would be promoted to Vice President, effective January 1, 2009. By that date, Mr. Loveland, the CUPLA Sales Manager, became Mr. Trisko's direct supervisor. *Id.* at ¶11.

Darryl Trisko is a Caucasian-American, who resides in Streamwood, Illinois. Am. Comp. ¶1. In November 2006, Mr. Trisko was hired as a Sales Representative for the CUPLA Division. *Id.* at 9. His duties included maintaining existing accounts and sales, as well as the marketing of new business for CUPLA. P. Add'l Facts ¶¶8-9. Prior to joining Nitto in 2006, Mr. Trisko worked from 1997 through 2003 as an English teacher in Japan, from 2003 through 2004 as a part-time construction worker, and from 2004 until starting at Nitto, Mr. Trisko was a sales representative for a company that manufactures custom rubber components. He received his Bachelor's Degree from St. Cloud State University in Anthropology. While working for Nitto in 2009, Mr. Trisko received a Master's Degree in Business Operations Management. *Id.* at 2.

Around the time of promoting Mr. Trisko's former supervisor, Mr. Wakikata, was the hiring of Mr. Shigeki Suzuki. He was to eventually replace Mr. Wakikata as the new General Sales Manager of Nitto in the United States. Suzuki Aff. ¶10. Mr. Suzuki is of Japanese origin and a citizen of Japan. He was originally hired

by Nitto Japan as a Sales Representative in July 2004. *Id.* at 5. His duties included coordinating sales and marketing for Nitto Japan's branch office and three distributors in Singapore, Indonesia, and a subsidiary in Australia. Additionally, he was responsible for discussing specifications, prices, and countermeasures with the R&D Department. By May 2007, Mr. Suzuki was also responsible for the coordination of sales and marketing in Taiwan, Thailand, and Malaysia. He trained staff and customers in using Nitto Japan's products, including CUPLA, Delvo, and machine and power tools. *Id.* at 5-8. By mid-2008, Mr. Suzuki was approached about transferring to Nitto in the United States in order to take over Mr. Wakikata's General Sales Manager position. *Id.* at 9-10. Prior to joining Nitto Japan, Mr. Suzuki worked from 2000 through 2004 as a sales representative for two Japanese companies. Mr. Suzuki received his Bachelor's Degree from California State University in Business Administration, with a concentration in Productivity and Quality Management. *Id.* at 4.

Mr. Trisko's three-count Amended Complaint essentially arises out of his claim that, around March 2009, he was told that he would not be needed at a meeting with the Japanese managers of a company called Tomita U.S.A., Inc., the largest client of the CUPLA Division; by April 2009, Nitto terminated him from his

4

position as the CUPLA Sales Representative; and he was replaced by Japanese citizen, Mr. Suzuki. Mr. Trisko claims that the FCN Treaty is inapplicable here, as Nitto is incorporated in California, and because Mr. Suzuki is not an "executive." Mr. Trisko further alleges that his termination was intentionally done, due to him not being of Japanese ancestry or origin, which violates Title VII as well as §1981.

Nitto seeks summary judgment, asserting that there is no genuine issue of material fact in dispute surrounding Mr. Trisko's termination. Nitto claims that Mr. Trisko was not terminated because he is Caucasian-American, but rather due to a significant two-year decline in sales within the CUPLA Division, for which he worked. Wakikata Aff. ¶16-17. The Division was composed of only three employees, Mr. Trisko being the most junior, and thus the one selected to let go as a cost-cutting measure. *Id.* at 18. Nitto maintains that, contrary to Mr. Trisko's assertions that Mr. Suzuki replaced him, his position has yet to be filled. *Id.* at 19-20. Instead, all his previous accounts were either absorbed by several remaining staff members or left unassigned. Suzuki Aff. ¶17. Defendant asserts that Mr. Suzuki was brought on solely to replace Mr. Wakikata. Wakikata Aff. ¶¶6-10. Moreover, Nitto contends that, even if there is evidence of discrimination, all

claims are barred by the Treaty of Friendship, Commerce and Navigation between the United States and Japan, which gives discrimination in favor of foreign executives a special status.

**STANDARD OF REVIEW**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. V. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In ruling on a Motion for Summary Judgment, the Court must consider the entire record and draw all reasonable inferences in a light most favorable to the non-movant. *Bay v. Cassens Transp. Co.* 212 F.3d 969, 972 (7th Cir. 2000). However, to survive summary judgment, the non-moving party must offer more than "mere conclusory" allegations. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). *See also, Matsushita Elec. Indus., Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986). The non-moving party will lose on summary judgment if he cannot present sufficient evidence to support each element of his case for which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

**ANALYSIS**

Mr. Trisko's three-count Amended Complaint claims that Nitto discriminated against him on the basis of his national origin, American, and race, Caucasian, in violation of Title VII and §1981, by denying him an opportunity to work with a long-standing customer, terminating his employment, and reassigning his duties to Mr. Suzuki. Mr. Trisko falls short of meeting the burden of proof for any of his claims. Even if Mr. Trisko met his burden, it would be futile, as all of his grievances are barred by the Treaty of Friendship, Commerce and Navigation between the United States and Japan.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...race,...or national origin." 42 U.S.C. § 2000e-2(a).

Title 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Mr. Trisko contends that the above legal standards have been violated, as Nitto favors Japanese people and citizens over American citizens of non-Japanese origin, and intentionally discriminated against him due to him being Caucasian-American. Plaintiffs in employment discrimination cases must present either direct or indirect evidence showing discriminatory intent by the defendants or its agents. *O'Regan v. Arbitration Forums Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). If the plaintiff does not provide any direct evidence of discrimination, he must proceed under the traditional four-part burden-shifting test established in *McDonnell Douglas*. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There, the Court explained that a plaintiff attempting to establish a claim of discrimination

8

generally must establish four prongs: (1) he is a member of a protected class, (2) he was meeting his employer's legitimate performance expectations, (3) he suffered an adverse employment action and (4) he was treated less favorably than similarly-situated individuals who are not members of his protected class. *Id.* at 802, 93 S.Ct. 1817.

Because Mr. Trisko is Caucasian-American, his claims are actually for reverse discrimination. In such cases, the first element of the *McDonnell Douglas* test, that plaintiff is a member of a protected class, cannot be used. Instead, Mr. Trisko must show "background circumstances" that demonstrate that Nitto has "reason or inclination to discriminate invidiously against whites" or provide evidence that there is something 'fishy' about the facts at hand. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 457 (7th Cir. 1999); *Phelan v. City of Chicago*, 347 F.3d 679, 685 (7th Cir. 2003).

Mr. Trisko provides little to no evidence in order to meet the first element of his *prima facie* case for race or national origin discrimination. Instead, Mr. Trisko restates the obvious: that he works for a Japanese company, was the only person recently terminated, and is male, Caucasian-American. This, standing on its own, does not appear 'fishy'. Moreover,

where the only two sales employees in the CUPLA Division, Mr. Trisko and Mr. Loveland, are both Caucasian-American, and Mr. Loveland, who worked 10 years for Nitto, was retained, Plaintiff fails to demonstrate how Nitto discriminated "invidiously against whites." *Mills* at 457. Mr. Trisko also fails to meet the fourth prong, as he insists that Mr. Suzuki is the "similary-situated non-American" employee who was treated more favorable by Nitto than him. However, to be comparable, an employee must be "directly comparable in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). This analysis entails a comparison of factors including whether the employee had the same supervisor, were subject to similar standards, and had comparable experience and qualification. Contrary to Mr. Trisko's assertions, the Court, explained more fully below, does not find Mr. Suzuki, an executive of Nitto, to be similarly situated to Mr. Trisko, a CUPLA Sales Representative. Therefore, this prong is not met either.

Because Mr. Trisko fails to provide evidence sufficient to meet two major elements of his *prima facie* case for race and national origin discrimination, in his response to Defendant's Motion for Summary Judgment, gears seem to quickly shift to a

final attempt in at least establishing a *prima facie* case of a mini-RIF. The Seventh Circuit has held that "the inference of discrimination arises in single-discharge cases, sometimes called "mini-RIFs,"[Reduction in Force] where the terminated employee's duties are absorbed by other employees not in the protected class." *Bellaver v. Quanex Corp.*, 200 F3.d 485, 495 (7th Cir. 2000);*See also Wichmann v. Board of Trustees of Southern Ill. Univ.*, 180 F.3d 791, 802 (7th Cir.1999); *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331-32 (7th Cir. 1995).

The mini-RIF test established in *Bellaver*, however, still implements all the prongs of the *McDonnell Douglas* test, except with regard to the fourth prong, the plaintiff does not need to show that he was treated less favorably than similarly-situated employees in the protected class. Instead, the fourth prong is met if the plaintiff is "constructively replaced" by employees outside the protected class. *Bellaver*, 200 F.3d at 495.

Mr. Trisko contends that his accounts and responsibilities were primarily absorbed by Mr. Suzuki, a member not of the protected class. However, because some of Mr. Trisko's responsibilities were absorbed by Mr. Loveland (Caucasian-American), his claim fails. When a 3-person division

11

downsizes to a 2-person division, it is understandable that accounts are divided and the more experienced person, or perhaps even one of the company's executives, takes over the struggling divisions largest account. Defendants provide evidence that Tomita, as well as four other previous accounts of Mr. Trisko's, were absorbed by Mr. Suzuki. However, Mr. Loveland assumed responsibility for three of Mr. Trisko's former accounts. In *Petts*, summary judgment for the employer was affirmed where a female employee was terminated from her position as an assistant store manager in a mini-RIF and brought a sex discrimination claim against her former employer. The Seventh Circuit determined that "the district court correctly found that Ms. Petts cannot establish the fourth prong of the min-RIF prima facie case. Even if some of her duties were absorbed by male employees, as she claims, some were absorbed by women." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008). As a result of Mr. Loveland, a Caucasian-American male within the protected class, absorbing some of Mr. Trisko's account responsibilities, Mr. Trisko is unable to establish the fourth element of his *prima facie* case.

Because Mr. Trisko cannot establish the fourth element of his mini-RIF claim, nor the first element of either the

mini-RIF or *McDonnell Douglas* test, he has failed to meet his burden of establishing a *prima facie* case for race or national origin discrimination under either Title VII or §1981. Accordingly, Nitto is entitled to summary judgment as a matter of law.

Even if Mr. Trisko had met the burden of proof for his claims above, they are barred by the FCN Treaty. Article VIII(1) of the FCN Treaty authorizes "companies of either Party [i.e. the U.S. and Japan] to engage, within the territories of the other Party ... executive personnel ... of their choice." Thus, the Treaty permits defendants to favor Japanese citizens, such as Mr. Suzuki, over American citizens, such as Mr. Trisko. *See Fortino v. Quasar Co.*, 950 F.2d 389, 393 (7th Cir. 1991); *MacNamara v. Korean Air Lines*, 863 F.2d 1135, 1146, 1147 (3rd Cir. 1988), cert. denied, 493 U.S. 944, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989). The Treaty does not conflict with Title VII, as Title VII forbids discrimination on the basis of race or national origin, but does not prohibit discrimination on the basis of citizenship. *Fortino v. Quasar Company*, 950 F.2d 389, 392 (7th Cir. 1991). *Fortino* clarifies the easy confusion of the two explaining, "especially in the case of a homogenous country like Japan, citizenship and national origin are highly

correlated...But to use this correlation to infer national-origin discrimination from a treaty-sanctioned preference for Japanese citizens who happen also to be of Japanese national origin would nullify the treaty." *Id*. At 392-393.

Mr. Trisko contends that the FCN Treaty can not apply as a matter of law for two main reasons, the first being that Nitto is incorporated in California, and the second due to his assertion that Mr. Suzuki does not qualify as an "executive." The first contention is inaccurate because a wholly-owned Japanese subsidiary company has the right to assert its parents' rights to the FCN Treaty. Plaintiff inaccurately relies upon *Sumitomo*, a case that considered the rights of a U.S. subsidiary company from a different, and much narrower, angle than Nitto requests this Court to use. *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 102 S. Ct. 2374 (1982). There, the Supreme Court held that the American subsidiary could not assert Treaty rights because it sought to assert such special status on its **own** behalf as a "company of Japan." The Supreme Court was careful to underscore the fact that it, "express[es] no view as to whether Sumitomo may assert any Article VIII(1) rights of its parents. *Id*. at 189 n.19.

14

What the Supreme Court in *Sumitomo* expressly declined to decide, is exactly what Nitto seeks this Court to determine, and what the Seventh Circuit, which binds this Court, has already held. The facts of the instant case are almost identical to that of *Fortino*, a case in which the Seventh Circuit held that a wholly-owned, American-incorporated subsidiary of a Japanese company can assert its parents' FCN Treaty rights. *Fortino*, 950 F.2d 389. There, the Court explained that the subsidiary's assertion of its parents' Treaty rights must be allowed "to the extent necessary to prevent the treaty from being set as naught. A judgment that forbids [the Japanese company] to give preferential treatment to the expatriate executives that its parent sends would have the same effect on the parent as it would have if it ran directly against the parent." *Id.* at 392. There, as here, the American subsidiary has the right to assert its parents' right to the FCN Treaty. If Nitto were not allowed to do so, in effect, Nitto Japan's rights to the Treaty are nullified.

Mr. Trisko's second argument against the FCN Treaty is also unavailing, as the Court finds strong evidence to support that Mr. Suzuki is an executive of the company. It is undisputed that Mr. Suzuki entered and remained in the U.S. on

15

an E-1 visa, "which is granted exclusively to foreign employees who perform duties of a supervisory or executive character." *MacNamara*, 863 F.2d at 1141-42. *See also Fortino*, 950 F.2d at 392. This fact alone is "strong evidence" of Mr. Suzuki's executive status. *See MacNamara*, 863 F.2d at 1142.

Mr. Trisko contends that, although Mr. Suzuki's title on his E-1 visa paper work is "Sales Manager," his job description consists of responsibilities that far surpass those that Mr. Trisko ever performed, and the Nitto organizational chart places him two levels above Mr. Trisko as an "Executive Assistant" to the Vice President, Mr. Suzuki actually was brought on to replace **him**. The only evidence Mr. Trisko has to support his conclusion that he was replaced by Mr. Suzuki, is that Mr. Suzuki took over Mr. Trisko's, and the CUPLA Division's, largest account -Tomita. This is a conclusory allegation that is insufficient to create doubt upon the stronger evidence that Mr. Suzuki is an executive. Regarding the review of executive status in a similar matter, the Seventh Circuit held, it "will not conduct an investigation; engaging in these investigations would frustrate the intent behind the FCN Treaties, which we have no authority or desire to do so." *Weeks v. Samsung Heavy Industries Co.. Ltd.*, 126 F.3d 926, 936-

937 (7th Cir. 1997). This Court also has no authority nor desire to investigate Mr. Suzuki's executive status beyond the fact that he was issued an E-1 visa declaring him an executive, and his duties appear to be supervisory and executive in nature.

Mr. Trisko lodges a final attack against the applicability of the Treaty, claiming that, because Nitto Japan did not directly dictate his termination, Nitto cannot be protected by the Treaty. It is undisputed, however, that Mr. Wakikata is both an employee of Nitto and Nitto Japan, and he terminated Mr. Trisko after receiving numerous directives from Nitto Japan to work on cost-cutting efforts. Although Defendant failed to clearly demonstrate the "acting as an agent" conclusion its first go around, Defendant's Reply makes clear that Mr. Wakikata was acting as an agent of Nitto Japan when he terminated Mr. Trisko.

Contrary to Mr. Trisko's assertions, there is no argument against the applicability of the FCN Treaty in the instant case. Accordingly, Nitto is entitled to summary judgment as a matter of law based on the FCN Treaty.

## Conclusion

For the reasons explained more fully above, the Court finds that Mr. Trisko has failed to make out a *prima facie* case of race or national origin discrimination; nor has he demonstrated that the FCN Treaty is inapplicable. Accordingly, the Court finds that there is no genuine issue for trial and that summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, is appropriate. Defendant's motion for summary judgment [#26] is granted.

Dated: September 13, 2011

ENTERED:

_____
ARLANDER KEYS
United States Magistrate Judge